## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WENDY BROOKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21-cv-52-DWD** |
| | ) | |
| **FEDEX SUPPLY CHAIN, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On May 19, 2020, Plaintiff Wendy Brooks filed this suit against Defendant FedEx Supply Chain, Inc. for alleged discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101, *et seq.* ("IHRA") (Doc. 1-1, p. 1).  Defendant was not served until December 16, 2020 (Doc. 1-1, p. 76), and after Plaintiff filed a First Amended Complaint in state court (Doc. 1-1, pp. 48-66).  Once served, Defendant removed the case to this Court (Doc. 1).

The Court previously dismissed Plaintiff's First Amended Complaint (Doc. 17). Defendant filed a Second Amended Complaint (Doc. 23), which Defendant also moved to dismiss (Doc. 30).  However, the Court denied the motion without prejudice when granting Plaintiff leave to file her proposed Third Amended Complaint (Doc. 36).  Now before the Court is Defendant's Motion to Dismiss the Third Amended Complaint (Doc.

41). Plaintiff filed a response in opposition (Doc. 50), to which Defendant replied (Doc. 51).

## *Brooks I*

Prior to this suit, on November 7, 2018, Plaintiff filed another lawsuit against Defendant also alleging employment discrimination, hostile work environment, gender discrimination, and retaliation beginning in April 2017. *See Brooks v. FedEx Supply Chain, Inc. and Singleton* in SDIL Case No. 19-cv-14-DWD ("*Brooks I*").[1] *Brooks I* was removed to this Court on January 4, 2019 (*Brooks I*, Doc. 1).  In *Brooks I*, Plaintiff brought four claims against Defendant FedEx for sexual harassment/hostile work environment, gender discrimination, and retaliation in violation of Title VII (*Brooks I*, at Docs. 1-1, 28, 106). Plaintiff also brought individual claims against her former co-worker, Theodore Singleton, for sexual harassment/hostile work environment, retaliation, and intentional inflection of emotional distress (*Id.*).

*Brooks I* generally covered the time period from April 2017 through December 2018, when Plaintiff alleged that she was terminated while on FMLA (*Id.*, at Docs. 1-1, pp. 13-14; Doc. 106, p. 22).  Plaintiff's claims in *Brooks I* related to Plaintiff's charge of discrimination filed with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on August 9, 2017 (EEOC No. 560-2017-01951) (*Brooks I*, at Docs. 1-1, pp. 13-14).[2]  The charge asserted a

---

[1]The Court can take judicial notice of these documents.  *See Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

[2]The EEOC and IDHR have a work sharing arrangement so when a charge is filed with one it is deemed cross-filed with the other.  *See McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 902–03 (N.D. Ill. 2011) (citing *Sofferin v. Am. Airlines, Inc.*, 923 F.2d 552, 554 (7th Cir. 1991)).

continuing discrimination action based on sexual harassment, hostile work environment, and retaliation, specifically related to Plaintiff's claim that she was physically touched by her coworker Singleton[3] (*Id.*).  In *Brooks I*, Plaintiff also argued that she suffered adverse employment actions taken by her supervisor, Brian Marsoun, including when Marsoun took disciplinary actions against her in July 2017, when Marsoun allegedly threw Plaintiff's application for another employment position away, and when Marsoun allegedly terminated Plaintiff while she was on FMLA leave in or about December 2018 (*Id.* at p. 21).

On April 12, 2021, the undersigned granted Defendant FedEx's motion for summary judgment disposing of Plaintiff's claims against FedEx in *Brooks I* (*Id.* at Doc. 106).[4]  Relevant to the instant matter, the Court found that Plaintiff "failed to put forth evidence of negligence on the part of FedEx" and concluded that Defendant FedEx was not negligent in discovering or remedying the alleged harassment related to Singleton's actions (*Id.* at Doc. 106, pp. 19-20).  The Court also found that the alleged adverse employment actions Plaintiff suffered were not adverse employment actions for the purposes of Title VII (*Id.* at pp. 20-22) (citing *Bell v. E.P.A.*, 232 F.3d 546, 554 (7th Cir. 2000) (for the purposes of Title VII, an adverse employment action must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in

---

[3]Plaintiff incorrectly referred to Defendant Singleton as "Theodore Hamilton" in her charge of discrimination (*Brooks I*, at Doc. 1-1).
[4]*Brooks I* remains pending as to Plaintiff's claims against Defendant Singleton but is currently stayed due to ongoing bankruptcy proceedings (*Id.* at Doc. 115).

benefits."). Indeed, the Court found that Plaintiff had "not offered evidence that any of the alleged actions Marsoun took were adverse employment actions." (*Brooks I*, at Doc. 106, p. 22). Instead, the Court highlighted portions of Plaintiff's testimony where she conceded that the alleged disciplinary actions did not impact her job, that she did not follow up with the employment position Marsoun allegedly threw away, and that she was not actually terminated in December 2018 (*Id.*).

### *Brooks II* Third Amended Complaint

In this matter, Plaintiff brings six counts against Defendant FedEx. Defendant FedEx is the only defendant. Counts I and II assert a sexual harassment/hostile work environment claim and related retaliation claim in violation of Title VII; Counts III and IV assert a claim for gender discrimination and a related retaliation claim under Title VII; and Counts V and VI assert a sexual harassment/hostile work environment claim and related retaliation claim in violation of the IHRA (Doc. 39). The Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Plaintiff makes the following assertions in her Third Amended Complaint (Doc. 39), which for the purposes of this motion are taken as true. *See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).* On or about October 14, 2019, Plaintiff filed a charge of discrimination with the EEOC and IDHR (EEOC No. 560-2020-00150, IDHR No. 2020SR2636) (hereinafter the "Charge") (Doc. 39-1, p. 1).[5] The Charge asserted that

---

[5]It is appropriate for the Court to consider the factual allegations in these documents at the 12(b)(6) motion to dismiss stage. *See, e.g., E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773, 778 (7th Cir. 2007)* (reasoning

Plaintiff was discriminated by FedEx on the basis of sex, retaliation, and "other." (*Id.*). Plaintiff indicated that the discrimination took place on the earliest of August 2018 and was continuing (*Id.*).   In the particulars space of the Charge, Plaintiff provided the following narrative:

### Hostile Work Environment; Discrimination; Retaliation

Wendy Brooks is an employee with Fed Ex Supply Chain, Inc. in Edwardsville, IL.

Wendy Brooks was subjected to numerous sexual harassment and hostile work environment incidents, including physical touching by a male supervisor, Theodore Hamilton. Wendy Brooks reported the sexual harassment, hostile work environment and discrimination to other supervisors and filed an EEOC Charge (No. 560-2017-01951) [6].

After making the aforementioned reports, the hostile work environment, harassment and discrimination continued.

Fed Ex Supply Chain, Inc. discriminated against Wendy Brooks because of her gender, a female.

Wendy Brooks was retaliated against through adverse employment actions because of her reports of sexual harassment, hostile work environment and discrimination.

(Doc. 39-1, p. 3).   On August 3, 2020, the IDHR dismissed Plaintiff's Charge for lack of jurisdiction (Doc. 39-2, p. 5).   On February 19, 2020, the EEOC was unable to conclude that there were any statutory violations and issued a right to sue letter (Doc. 39-2, p. 2).

---

that EEOC charges attached to a complaint become part of the pleadings under Fed. R. Civ. P. 10(c)); *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 753 (7th Cir. 2002).

[6] The events at subject in EEOC Charge No. 560-2017-01951 were at issue in *Brooks I* (*Brooks I*, at Doc. 1-1, p. 13).   In the *Brooks I* charge, just as in the *Brooks II* charge, Plaintiff incorrectly referred to her coworker, "Theodore Singleton", as "Theodore Hamilton." *See generally Brooks I*, at Doc. 1-1 (the IHRA documents confirm that the individual co-worker alleged to have inappropriately touched Plaintiff was Theodore Singleton and not Theodore Hamilton).

In her *Brooks II* complaint, Plaintiff asserts that she is a female, qualified for her employment position, and meeting Defendant's legitimate work expectations (Doc. 39, p. 1).  Plaintiff alleges she was subjected to continuing sexual harassment and a hostile work environment by her male supervisors and male co-workers, and her similarly situated male co-workers were treated more favorably at work (Doc. 39, pp. 1, 4).  Plaintiff complained of the harassment to her managers, filed complaints with the EEOC and IDHR, and initiated the lawsuit in *Brooks I* (Doc. 39, pp. 2-4).  After taking these actions, the harassment, hostile work environment, and discrimination continued (Doc. 39, at pp. 1-3), and Defendant retaliated against Plaintiff and took adverse employment actions against her for making these reports (Doc. 39, at pp. 1-3, 5).

Plaintiff provides the following examples, which she contends were incidents of continued harassment and hostile work environment, adverse employment actions and/or retaliatory actions she experienced: [7]

> a. Brooks' immediate supervisor, Brian Marsoun, lied to her telling her that she was not able to apply for other specific positions in the FedEx facility, after she was told the jobs were available to her. He took active measures to prevent Brooks from obtaining other positions in the FedEx facility. The other positions would have allowed Brooks to make more money than her sanitation job. In addition, the other positions in the FedEx facility allowed overtime hours, whereas Brooks' sanitation job was not allowed any overtime pay.

---

[7]Plaintiff repeats these examples as wrongful activity in each of her six counts (Doc. 39).  However, Plaintiff does not specify whether these examples were illustrations of the initial harassment she suffered, or whether they showed instances of continuing harassment or retaliatory acts performed after Plaintiff made her initial harassment complaints, or whether they amounted to adverse employment actions taken against her.  For the purposes of the pending motion, the Court construes these allegations broadly, and will consider each example, to the extent appropriate, as asserting the relevant discrimination, retaliatory act, and/or adverse employment action as may be relevant to each individual claim.

b. Brooks' immediate supervisor, Brian Marsoun, assigned more jobs and tasks to Brooks compared to other male teammates in the sanitation department. Brooks' supervisors on the weekend shifts adhered to Marsoun's instructions and Brooks received more tasks and jobs than the male teammates. Brooks' weekend supervisor agreed that Brooks' workload was definitely more than what was required by the men in the sanitation department. Brooks did most of the strenuous baling of cardboard by herself, compared to her male counterparts. Brooks did most of the trash and cleaning of certain parts of the facilities, as well as more duties that the male teammates were doing. Brooks not only had to do the regular cleaning schedule, similar to the male teammates, but she always had to do the additional assignments given to her by her immediate supervisor, Brian Marsoun.

c. Brooks was required to wipe down racks with a bucket of water and the male teammates did not have to do these tasks.

d. Brian Marsoun, Brooks' immediate supervisor, took away supervisory responsibilities over Brooks that other weekend supervisors would have performed. Weekend supervisors routinely approved of male teammates' requests for vacation time or personal time, but Brooks could only obtain approval from Brian Marsoun for vacation time or personal time and the weekend supervisors could not approve her time off.

e. Brooks was disciplined for untrue allegations against Brooks after reports of sexual harassment. The discipline included termination by Brian Marsoun until Brooks fought to have it was reversed. These falsified disciplinary actions remained in her record at work, including her personnel file.

f. Brooks is not being paid the correct wages to scale and compared to similarly situated employees.  Two supervisors for Defendant, including the operations manager of the facility, informed Brooks that she was being paid a lower, incorrect wage, but when attempts were made to correct the wages, the supervisors were informed not to discuss the lower wages with Brooks.  The wages are lower than a similarly situated males and they are lower and not being corrected in retaliation for reporting discrimination and a hostile work environment.

(Doc. 39, pp. 3, 6, 10, 13, 16, 19).

## Legal Standard

The purpose of a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

## Discussion

Plaintiff brings claims for sexual harassment/hostile work environment, gender discrimination, and retaliation in violation of the IHRA and Title VII. Both Federal and Illinois state courts analyze and apply the same standard to IHRA and Title VII discrimination and retaliation claims. *See, e.g.*, *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) (citing *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) and *Zaderaka v. Illinois Hum. Rts. Comm'n*, 131 Ill. 2d 172, 178 (1989)).

8

Title VII "makes it an unlawful employment practice by an employer to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986) (internal quotations omitted); *see also Martinez v. Nw. Univ.*, 173 F. Supp. 3d 777, 783 (N.D. Ill. 2016) (It is also unlawful under the IHRA to discriminate against person because of her sex, and the IHRA prohibits employers from engaging in sexual harassment). Title VII and the IHRA also forbid employers from retaliating against employees for complaining about prohibited discrimination. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016); *Martinez*, 173 F. Supp. 3d at 783.

Defendant argues that Plaintiff's Third Amended Complaint should be dismissed, with prejudice, because the complaint, and underlying EEOC Charge, are nearly identical to the complaint and allegations in *Brooks I* (Doc. 42). Specifically, Defendant argues that five of the six incidents Plaintiff alleged to have experienced were ruled on and disposed of in *Brooks I* in Defendant's favor and should now be dismissed as duplicative under the doctrine of *res judicata* (Doc. 42) (citing *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("[G]enerally, a suit is duplicative if the 'claims, parties, and available relief do not significantly differ between the two actions.'"). Defendant also argues that Plaintiff failed to administratively exhaust her claims, and specifically her new allegation of pay discrimination. Finally, Defendant maintains that the amended complaint fails to set forth the minimal factual allegations necessary to state a plausible claim.

Res judicata "blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015); *see also Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021).   In interpreting the scope of a claim for preclusion purposes, the court is not limited to the words in the complaint, but "examine[s] the complaint to discern the basis of the litigation." *Daza*, 2 F.4th at 684. The Court then decides "if the two claims 'arise from the same transaction … or involve a common nucleus of operative facts.' Anything falling within that common nucleus, whether or not actually raised, falls within the scope of the claim and is thus subject to claim preclusion in a later case." *Id.* (citing *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, -- U.S. --, 140 S. Ct. 1589, 1594-95 (2020)); *Barr*, 796 F.3d at 841 ("Of the third element, we have said that 'two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations.'") (citing *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)).

The Seventh Circuit also squarely forecloses claim-splitting in employment discrimination cases.  *See Daza*, 2 F.4th at 684 (citing *Barr*, 796 F.3d at 840).  "The basic principle underlying these cases is that a plaintiff cannot evade preclusion by 'identifying a slightly different cause of action with one element different from those in the first, second, or third lawsuits between the same parties arising from the same events.'" *Barr*, 796 F.3d at 840 (citing *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011)) (internal markings omitted)).  While claim preclusion "does not prevent parties from bringing a suit involving actions that 'occurred after the conclusion' of the previous suit",

it can preclude claims involving events that existed at the same time.  *Daza,* 2 F.4th at 685 (citing *Lucky Brand Dungarees, Inc.,* 206 L. Ed. 2d 893).  Similarly, the requirement to exhaust administrative remedies in the employment-discrimination context is no excuse for claim-splitting.  *Daza,* 2 F.4th at 685 (citing *Barr,* 796 F.3d at 840).  Instead, the Seventh Circuit repeatedly instructs that "a discrimination claimant who is waiting for a right-to-sue letter on new claims that are factually linked to an earlier suit—can easily ask the district court to stay the first case until the EEOC letter arrives."  *Barr,* 796 F.3d at 840 (citing *Palka v. City of Chicago,* 662 F.3d 428, 438 (7th Cir. 2011); *Czarniecki,* 633 F.3d at 550).

Here, there is no genuine dispute concerning the first two elements of res judicata. Although Plaintiff sued an additional defendant in *Brooks I*, this nominal difference has no significance as to Defendant FedEx's claims here, such that there is an identity of parties.  Further, summary judgment was entered in Defendant FedEx's favor in *Brooks I* such that those claims were on the merits.  *See, e.g., Czarniecki,* 633 F.3d at 549 (finding that the granting of summary judgment as to one defendant in a separate case gave rise to a final judgment in favor of that defendant).  Thus, the only dispute is whether there was an identity in the causes of action in the two suits.

Plaintiff concedes that the first five allegations of discrimination in *Brooks II*, Doc. 39, ¶¶8(a)-(e)), are identical to those raised in *Brooks I*, stating:

> Plaintiff admits that the first five allegations are identical to Brooks I, but to the extent that some events occurred after the filing of the EEOC/IDHR Complaint for Brooks I, the separate filing of the EEOC/IDHR action of Brooks I was filed to preserve these claims for Appeal of the Summary Judgment ruling in Brooks I.

(Doc. 50, pp. 3-4).  Plaintiff thus argues generally that some of the events in *Brooks II* may cover a different time period from *Brooks I*.  Plaintiff further represents that the only new allegation in *Brooks II* is her wage discrimination claim (Doc. 50, pp. 2-4).

Turning first to the identical allegations, the Court is not persuaded that events at issue in *Brooks I* and *Brooks II* are unrelated in time or scope to escape preclusion.  Indeed, Plaintiff's charge of discrimination in *Brooks I* covered dates of discrimination starting in April 2017 and continuing through at least December 2018 (*Brooks I*, Doc. 1-1, p. 13; *Brooks I*, Doc. 106).  While Plaintiff did not specify "an end" date for the discrimination in *Brooks I*, the Court considered conduct occurring as late as December 2018 when Plaintiff alleged that she was unlawfully terminated (*Brooks I*, at Doc. 106).  This time period overlaps with Plaintiff's charge of discrimination in *Brooks II*, which states that the discrimination began in August 2018 (Doc. 39-1, p. 2).

Further, in *Brooks I*, Plaintiff complained of the same discriminatory actions taken by Brian Marsoun against her as she alleges in *Brooks II*.  Specifically, in *Brooks I*, Plaintiff argued that Brian Marsoun took the following adverse actions against her: filing untrue disciplinary actions in July 2017, throwing Plaintiff's employment application away, and terminating Plaintiff while she was in FMLA leave in December 2018 (*Brooks I*, Doc. 106, at p. 21).  Plaintiff also argued in *Brooks I* that Marsoun unilaterally restricted her vacation time and assigned more jobs than other male coworkers (*Brooks I*, Doc. 98, pp. 4-8).  The Court found that the sum of the alleged discriminatory actions were not adverse employment actions for the purposes of Title VII so to hold Defendant FedEx liable

(*Brooks I*, Doc. 106, p. 22) ("Plaintiff has not offered evidence that any of the alleged actions Marsoun took were adverse employment actions.").

Nevertheless, in *Brooks II*, Plaintiff again argues that Defendant discriminated or retaliated against her through Brian Marsoun's actions in preventing Plaintiff from obtaining other employment positions, assigning Plaintiff additional tasks, unilaterally approving Plaintiff's leave time, and filing disciplinary reports against Plaintiff (*See Brooks II* at Doc. 39, ¶¶ 8(a)-(3)).  Thus, the Court is unable to determine that the two lawsuits are indeed unrelated.  Instead, most of the alleged unlawful acts in *Brooks II* were also at issue, and disposed of, in *Brooks I*.  Plaintiff's claims therefore arise from the same transactions or involve a common nucleus of operative facts, such that thy are subject to claim preclusion here.  *See Daza*, 2 F.4th at 684 ("[I]f the two claims 'arise from the same transaction … or involve a common nucleus of operative facts' anything falling within that common nucleus, whether or not actually raised, falls within the scope of the claim and is thus subject to claim preclusion in a later case.") (citing *Lucky Brand Dungarees, Inc.*, 206 L. Ed. 2d 893).

Moreover, Plaintiff's thread-bare arguments that the alleged events in *Brooks II* occurred after the conclusion of *Brooks I* are largely underdeveloped.  Regardless, the claims in *Brooks I* were not disposed of until April 2021, almost 12 months after Plaintiff filed her *Brooks II* complaint in state court (Doc. 1-1, p. 1), and nearly 18 months after filing her *Brooks II* Charge of Discrimination in October 2019 (Doc. 1-1, p. 9).  Accordingly, nothing prevented Plaintiff from seeking to include these new claims in *Brooks I* or to have *Brooks I* stayed in order to exhaust any new claims.  *See, e.g., Barr*, 796 F.3d at 840.

To the extent Plaintiff's Complaint does seek to redress new conduct, Plaintiff has not administratively exhausted those claims. Related here, the Court reviews the only new allegation in *Brooks II*, which is her wage discrimination claim. The parties do not argue that this wage discrimination claim could have been raised in *Brooks I*, and the allegations in the Third Amended Complaint provide no context or specificity for the Court to determine when this claim arose with or is factually related to the events in *Brooks I*. Nevertheless, this claim is not without procedural issues, which the Court will address below. But first, the Court will address Plaintiff's argument that her Third Amended Complaint is sufficient to withstand dismissal because Chief Judge Rosenstengel found her similar complaint in *Brooks I* to be sufficiently pled (*See Brooks I*, at Doc. 28) (denying, in part, Defendant's motion to dismiss Plaintiff's complaint).

This argument is easily rejected. While the complaints and charges of discrimination in *Brooks I* and *Brooks II* are nearly identical, Plaintiff overlooks one crucial distinguishing factor between the two complaints. Specifically, in *Brooks I*, the IDHR investigated Plaintiff's charge of discrimination and issued a lengthy IDHR Investigation Report, containing numerous pages of narrative and investigative findings (*See Brooks I*, at Doc. 1-1, pp. 18-20, 28-33). This report was attached to Plaintiff's complaint in *Brooks I* so the Court was permitted to consider the additional facts in ruling on the motion to dismiss in *Brooks I*. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Indeed, in the *Brooks I* order, the Court relied heavily on the IDHR's narrative and administrative findings to supplement the otherwise bare-bone factual allegations in the complaint (*Brooks I*, at Doc. 28). In this matter, however, there

14

is no similar investigative report to otherwise supplement Plaintiff's bare-boned allegations.  This lack of information becomes particularly problematic in resolving the issue of administrative exhaustion.

The Seventh Circuit has long recognized that before filing a discrimination lawsuit a plaintiff must exhaust her administrative remedies by presenting all of her claims to the EEOC. *Elliott v. Dedelow*, 115 F. App'x 881, 883 (7th Cir. 2004); *see also Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256–257 (7th Cir. 2011).  This "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved." *McGoffney v. Vigo Cnty. Div. of Fam. & Child., Fam. & Soc. Servs. Admin.*, 389 F.3d 750, 752 (7th Cir. 2004) (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *see also, Conner v. Illinois Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). If Plaintiff failed to administratively exhaust her claims, her suit is subject to dismissal.  *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010); *McQueen*, 803 F. Supp. 2d at 903 ("scope of the charge" challenges are appropriate at the dismissal stage).

"Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC" unless the claims are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Moore*, 641 F.3d at 256–57 (citing *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003), *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*)).

To be "like or reasonably related," the relevant claim and the EEOC charge "must, at minimum, describe the same conduct and implicate the same individuals." *Moore*, 641 F.3d at 257 (citing *Cheek.*, 31 F.3d at 501).

Whether Plaintiff's current claims are within the scope of her EEOC charge is a question of law. *Conner*, 413 F.3d at 680. "Courts review the scope of an EEOC charge liberally. Most EEOC charges are ... drafted by laypersons rather than lawyers, so a Title VII plaintiff need not include in [his] charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit's claims." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citing *Cheek*, 31 F.3d at 501). Nonetheless, general allegations of discrimination in an EEOC or IDHR charge are not sufficient predicates for bringing any discrimination theory in federal court. *McQueen*, 803 F. Supp. 2d at 902; *Hale v. Bd. of Trustees of S. Illinois Univ. Sch. of Med.*, 219 F. Supp. 3d 860, 866 (C.D. Ill. 2016).

The allegations in Plaintiff's Charge (Doc. 39-1, pp. 2-3) are very generic and offer little specificity. Indeed, the entirety of the narrative section provides:

**<u>Hostile Work Environment; Discrimination; Retaliation</u>**

Wendy Brooks is an employee with Fed Ex Supply Chain, Inc. in Edwardsville, IL.

Wendy Brooks was subjected to numerous sexual harassment and hostile work environment incidents, including physical touching by a male supervisor, Theodore Hamilton. Wendy Brooks reported the sexual harassment, hostile work environment and discrimination to other supervisors and filed an EEOC Charge (No. 560-2017-01951).

After making the aforementioned reports, the hostile work environment, harassment and discrimination continued.

> Fed Ex Supply Chain, Inc. discriminated against Wendy Brooks because of her gender, a female.
>
> Wendy Brooks was retaliated against through adverse employment actions because of her reports of sexual harassment, hostile work environment and discrimination.

(Doc. 39-1, p. 3). Apart from the one specific example of her being touched by Theodore Hamilton/Singleton[8], the Charge contains no other details of the specific harassment or hostile work environment incidents to which Plaintiff was subjected, or the specific adverse employment actions taken against her by Defendant. Moreover, the Charge contains no reference to specific dates, events, subjects, or other pertinent details.

In contrast, Plaintiff's Third Amended Complaint is much broader. She alleges sexual harassment/hostile work environment incidents, discrimination, retaliatory acts, and adverse employment actions predicated on multiple incidents involving the individual Brian Marsoun (Doc. 39). Specifically, Plaintiff complains that Marsoun lied to Plaintiff and actively prevented her from applying to higher paying jobs, assigned Plaintiff more tasks, assignments, and jobs, including more strenuous jobs than her male counterparts, "took away supervisor responsibilities" and unilaterally controlled her time off, and terminated Plaintiff for false disciplinary actions (Doc. 39, at ¶¶ 8(a), (b), (c),

---

[8] The specific incident involving Theodore Hamilton/Singleton was at issue in *Brooks I* and has already been resolved in Defendant FedEx's favor (*Brooks I*, at Doc. 106) (granting FedEx's motion for summary judgment and finding that FedEx was not negligent in discovering or remedying the alleged harassment related to Plaintiff's allegations of inappropriate physical touching by Theodore Singleton). Accordingly, the Court found that this incident involving Theodore Hamilton did not serve as a basis for liability under Title VII against FedEx.

(d), (e)). Plaintiff also alleges that Defendant is not paying Plaintiff her correct wages, and she is being paid lower than similarly situated males (Doc. 39, at ¶8(f)).

The Court fails to see how Plaintiff's sexual harassment/hostile work environment, gender discrimination, and retaliation claims in this matter are encompassed by or reasonably related to her Charge.  In making this determination, the Court evaluates the conduct described and individuals implicated in both the Charge and the complaint.  *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1005 (7th Cir. 2019).  Plaintiff's Charge is nearly as bare bones as it can be with Plaintiff mentioning in only general conclusory fashion that she is: (1) being subjected to numerous sexual harassment and hostile work environment incidents, (2) being discriminated against, and (3) being retaliated against for her reports of harassment, hostile work environment and discrimination.

However, the only incidents she mentions with any specificity involve her being physical touched by Theodore Hamilton/Singleton, and her filing of her prior EEOC Charge (No. 560-2017-01951), both of which have already been litigated and resolved in FedEx's favor.  *See Brooks I*, at Doc. 106.  Plaintiff provides no other names, not even of the other unspecified supervisors to whom she complained.  She also fails to articulate what alleged adverse employment actions were taken against her and does not provide any dates for when the alleged harassment occurred, when the alleged reports were made, or when the alleged unspecified adverse employment actions occurred.  Accordingly, the narrative Plaintiff provides is completely devoid of any factual allegations seemingly related to the conduct described in her complaint.

"[T]he requirement of some specificity in an EEOC charge is not a mere technicality." *Cheek*, 31 F.3d at 501–02.   Further, claims of discrimination in an administrative charge and claims of discrimination in a complaint are not alike or reasonably related just because they both assert discrimination; rather, a plaintiff must specifically describe the conduct giving rise to the claims in order to preserve them. *Id.* at 501; *see also Reynolds v. Tangherlini*, 737 F.3d 1093, 1100 (7th Cir. 2013); *Thomas v. Chicago Teachers' Pension Fund*, No. 22-1176, 2022 WL 17543703 (7th Cir. Dec. 6, 2022), at * 3 ("[A]sserting 'the same kind of discrimination' in the charge and complaint is not sufficient to relate the two; rather, some factual connection is needed.").   Plaintiff's broad references to harassment, hostile work environment, discrimination, and retaliation, and unspecified adverse employment actions are simply too vague to have put the EEOC or Defendant on notice of Plaintiff's assertions in her complaint and to preserve the discrimination claims she raises in this action.   Likewise, Plaintiff did not provide any facts in her Charge that suggest she was being improperly paid so to put the EEOC or Defendant on notice of her new wage discrimination claim.

Even construing the Charge broadly, the Court cannot find that the claims alleged in the Charge are reasonably related to the allegations in the complaint.   The Charge must actually "*make* allegations" to do that.   *Surgit v. City of Chicago*, No. 1:19-CV-07630, 2021 WL 1192674, at *4 (N.D. Ill. Mar. 29, 2021) (emphasis in original); *see also Reynolds*, 737 F.3d at 1100 (a charge without "minimally adequate factual specificity" does not preserve a claim). Even an expansive interpretation of Plaintiff's charge does not permit the Court to supply facts and details that Plaintiff failed to include. There simply are no factual

19

allegations in the charge to which the Court can reasonably link to the current discrimination claims. *See Cheek*, 31 F.3d at 501–02 (the charge "must at least have described, with some degree of specificity, the conduct she considered discriminatory"); *McGoffney*, 389 F.3d at 752 (finding that plaintiff's "vague allegations" and failure to mention any specific employment action, individuals, or any specific facts, were insufficient to place the EEOC or defendant on notice of her claims); *Askew v. Waukegan Pub. Sch. Dist. 60*, 767 F. Supp. 2d 923, 931 (N.D. Ill. 2011) (generalized allegations do not provide necessary notice of specific discrimination claims) (citing *McGoffney*, 389 F.3d at 752).

While courts may look beyond unclear charges and review more detailed written narratives or documents filed with or attached to a charge, here, Plaintiff does not point to the existence of a detailed written narrative (unlike the one supplied in *Brooks I*). Plaintiff also does not suggest that any facts are missing from the record that would affect the exhaustion defense.  Because the Court is unable to say that Plaintiff's claims for sexual discrimination/hostile work environment, gender discrimination, and retaliation are like or reasonably related to her administrative Charge, those claims have not been administratively exhausted and must be dismissed.  The dismissal will be without prejudice. *See Teal v. Potter*, 559 F.3d 687, 593 (7th Cir. 2009) (the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice) (collecting cases).

Finally, the Court cannot conclude that any additional opportunity to amend Plaintiff's complaint would cure the issues in this case.  Plaintiff has already been given

two opportunities to amend her complaint.  While her Third Amended Complaint sets out more facts than the original, it still misses the fundamental problem that Plaintiff's administrative Charge was skeletal and devoid of essential facts that have not already been litigated.  This fundamental problem cannot be cured by further amendments to the complaint.

## Conclusion

For these reasons, Defendant's Motion to Dismiss (Doc. 41) is **GRANTED**. Plaintiff's Third Amended Complaint (Doc. 39) is **DISMISSED, without prejudice**, for a failure to exhaust administrative remedies.  The Clerk of Court is directed to enter judgment accordingly, and to close this case.

**SO ORDERED.**

Dated:  January 30, 2023

DAVID W. DUGAN
United States District Judge